No. 22-30125

# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

Gregory Savage,
*Plaintiff-Appellee*

v.

James M. LeBlanc, Secretary, Department of Public Safety and Corrections; Darrel Vannoy, Warden, Louisiana State Penitentiary, in his individual capacity; Joseph Lamartiniere, Deputy Warden, in his individual capacity; Tim Delaney, Deputy Warden, in his individual capacity; Shirley Coody, Assistant Warden, in her individual capacity; Saundra Rosso, Inmate Banking, in her individual capacity; Heather Hood, Attorney for Secretary, in her individual capacity; Lucius L. Morris, II, Louisiana Department of Revenue, in his individual capacity,
*Defendants-Appellants*

On Appeal from the United States District Court
for the Middle District of Louisiana
Case No. 3:20-cv-00811

## Brief of Plaintiff-Appellee

Oren Nimni
Samuel Weiss
RIGHTS BEHIND BARS
416 Florida Avenue NW, #26152
Washington, DC 20001
(202) 540-0029
oren@rightsbehindbars.org

Stephany Reaves
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Ave., NW
Suite 500E
Washington, DC 20001
P: (202) 220-1100
F: (202) 220-2300
Stephany.Reaves@mto.com

Jordan Segall
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue
50th Floor
Los Angeles, CA 90071
(213) 683-9100
Jordan.Segall@mto.com

*Counsel for Plaintiff-Appellant*

## CERTIFICATE OF INTERESTED PERSONS

No. 22-30125 (5th Cir.)

Gregory Savage,

*Plaintiff-Appellee*

v.

James M. LeBlanc, Secretary, Department of Public Safety and Corrections; Darrel Vannoy, Warden, Louisiana State Penitentiary, in his individual capacity; Joseph Lamartiniere, Deputy Warden, in his individual capacity; Tim Delaney, Deputy Warden, in his individual capacity; Shirley Coody, Assistant Warden, in her individual capacity; Saundra Rosso, Inmate Banking, in her individual capacity; Heather Hood, Attorney for Secretary, in her individual capacity; Lucius L. Morris, II, Louisiana Department of Revenue, in his individual capacity,

*Defendants-Appellants*

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

1. **Plaintiff-Appellee:**

   Gregory Savage

2. **Defendants-Appellants:**

   James M. LeBlanc, Secretary, Department of Public Safety and Corrections; Darrel Vannoy, Warden, Louisiana State Penitentiary, in his individual capacity; Joseph Lamartiniere, Deputy Warden, in his individual capacity; Tim Delaney, Deputy Warden, in his individual capacity; Shirley Coody, Assistant Warden, in her individual capacity;

i

Saundra Rosso, Inmate Banking, in her individual capacity; Heather Hood, Attorney for Secretary, in her individual capacity; Lucius L. Morris, II, Louisiana Department of Revenue, in his individual capacity

3.    **Counsel for Plaintiff-Appellant:**

Oren Nimni; Samuel Weiss; Rights Behind Bars; Stephany Reaves; Jordan Segall; Munger, Tolles & Olson LLP

4.    **Counsel for Defendants-Appellees:**

Jeff Landry, Attorney General of the State of Louisiana; Andre Charles Castaing & Phyllis E. Glazer, Assistant Attorneys General.

Respectfully submitted,

Date: July 5, 2022

/s/ Stephany Reaves
Stephany Reaves
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Ave., NW
Suite 500E
Washington, DC 20001
P: (202) 220-1100
F: (202) 220-2300
Stephany.Reaves@mto.com

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiff-Appellee Gregory Savage requests oral argument, as he believes it could significantly aid the decisional process in this case.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS ..........................................................i

STATEMENT REGARDING ORAL ARGUMENT .............................................. iii

INTRODUCTION ................................................................................................1

STATEMENT OF JURISDICTION........................................................................2

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ...........................2

STATEMENT OF THE CASE...............................................................................3

I.   FACTUAL BACKGROUND..........................................................................3

II.  RELEVANT PROCEDURAL HISTORY .......................................................8

SUMMARY OF ARGUMENT .............................................................................12

STANDARD OF REVIEW ..................................................................................13

ARGUMENT ......................................................................................................14

I.   MR. SAVAGE SUFFICIENTLY ALLEGED A CONSTITUTIONAL
     VIOLATION OF HIS RIGHT TO PROCEDURAL DUE PROCESS.........14

     A.   Mr. Savage Identified a Clearly Established Property Interest in
          the Money He Earns From His Hobbycraft Sales................................15

     B.   The Complaint Adequately Pleads that Governmental Action
          Resulted in a Deprivation of Mr. Savage's Property Interest .............17

          1.   The Prison Officials confiscated Mr. Savage's money
               without advanced notice or an opportunity to be heard............18

          2.   The state post-deprivation remedies available to Mr.
               Savage do not supply constitutionally adequate due
               process...................................................................................21

II.  MR. SAVAGE STATED A CLAIM FOR CONSPIRACY TO
     VIOLATE A CONSTITUIONAL RIGHT ................................................25

III. THE DISTRICT COURT CORRECTLY DENIED THE PRISON
     OFFICIALS QUALIFIED IMMUNITY.....................................................27

CONCLUSION...................................................................................................33

CERTIFICATE OF SERVICE ............................................................................34

## TABLE OF CONTENTS
### (Continued)

**Page**

CERTIFICATE OF COMPLIANCE.........................................................................35

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Armstrong v. Ashley*,
  918 F.3d 419 (5th Cir. 2019) ....................................................................2

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..............................................................................13, 14

*Bd. of Regents v. Roth*,
  408 U.S. 564 (1972)........................................................................................15

*Bevill v. Fletcher*,
  26 F.4th 270 (5th Cir. 2022) ...........................................2, 13, 14, 25

*Brosseau v. Haugen*,
  543 U.S. 194 (2004)........................................................................................27

*Campbell v. Miller*,
  787 F.2d 217 (7th Cir. 1986) .......................................................16, 31

*Clark v. Huntleigh Corp.*,
  119 F. App'x 666 (5th Cir. 2005) ....................................................14

*County Line Joint Venture v. Grand Prairie*,
  839 F.2d 1142 (5th Cir. 1988) .........................................................20

*Dillon v. Rogers*,
  596 F.3d 260 (5th Cir. 2010) ............................................................22

*Dyer v. Houston*,
  964 F.3d 374 (5th Cir. 2020) ......................................13, 27, 28, 32

*Erickson v. Pardus*,
  551 U.S. 89 (2007).........................................................................................13

*Geiger v. Jowers*,
  404 F.3d 371 (5th Cir. 2005) ............................................................24

*Gentilello v. Rege*,
  627 F.3d 540 (5th Cir. 2010) ............................................................14

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

*Hudson v. Palmer*,
    468 U.S. 517 (1984) ............................................................................... 18

*Logan v. Zimmerman Brush Co.*,
    455 U.S. 422 (1982) ........................................................ 9, 11, 18, 19

*Mahers v. Halford*,
    76 F.3d 951 (8th Cir. 1996) .......................................................... 16, 30

*Marshall v. Norwood*,
    741 F.2d 761 (5th Cir. 1984) ....................................................... 18, 21

*Meadours v. Ermel*,
    483 F.3d 417 (5th Cir. 2007) ....................................................... 31, 32

*Morris v. Livingston*,
    739 F.3d 740 (5th Cir. 2014) ................................................... *passim*

*Parratt v. Taylor*,
    451 U.S. 527 (1981) ............................................................................... 18

*Quick v. Jones*,
    754 F.2d 1521 (9th Cir. 1985) ........................................................... 29

*Reynolds v. Wagner*,
    128 F.3d 166 (3rd Cir. 1997) ..................................................... 16, 29

*Rosin v. Thaler*,
    417 F. App'x 432 (5th Cir. 2011) ....................................... 15, 17, 29

*Smith v. Epps*,
    326 F. App'x 764 (5th Cir. 2009) .............................................. 28, 29

*Stotter v. Univ. of Tex. at San Antonio*,
    508 F.3d 812 (5th Cir. 2007) ............................................................ 15

*Taylor v. Riojas*,
    141 S. Ct. 52 (2020) ............................................................................. 27

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

*Turner v. Safley*,
482 U.S. 78 (1987) ............................................................................... 15

*Vance v. Barrett*,
345 F.3d 1083 (9th Cir. 2003) ...................................................... 15, 29

*Wilkerson v. Goodwin*,
774 F.3d 845 (5th Cir. 2014) ........................................................ 24, 30

*Zinermon v. Burch*,
494 U.S. 113 (1990) ............................................................................ 15

STATE CASES

*Anderson v. Louisiana Dep't of Public Safety & Corrections*,
242 So. 3d 614 (La. Ct. App. 2018) .............................................. 20, 22

*Fulford v. Green*,
474 So. 2d 972 (La. Ct. App. 1985) ................................................... 17

FEDERAL STATUTES

28 U.S.C. § 1331 .................................................................................... 2

28 U.S.C. § 1343(a)(3) ........................................................................... 2

42 U.S.C. § 1983 ........................................................................... *passim*

STATUTES - OTHER

La. R.S. 15:874 .................................................................................... 21

La. R.S. 15:1177(A)(3) ........................................................................ 22

La. R.S. 15:1177(A)(5) ........................................................................ 22

CONSTITUTIONAL PROVISIONS

U.S. Const. amend. XIV ....................................................................... 15

## INTRODUCTION

Plaintiff-Appellee Gregory Savage, a prisoner at the Louisiana State Penitentiary at Angola, alleged that certain officials at the prison illegally confiscated thousands of dollars he earned from selling handmade belts at prison-sponsored events as part of an unauthorized practice of skimming 20% or more of prisoners' earnings.  Mr. Savage further alleged that when he challenged the confiscation of his property in administrative and state-court proceedings, the same officials conspired to deprive Mr. Savage of a meaningful opportunity to recover his earnings.  Taking those allegations as true, as required at the pleading stage, the district court correctly held that Mr. Savage stated claims for a violation of procedural due process and a conspiracy to deprive him of due process, and that the prison officials were not entitled to qualified immunity.  Those rulings were correct and should be affirmed.

Mr. Savage alleges that this "practice" is a lucrative coordinated campaign whereby the Defendants-Appellants—collectively, the "Prison Officials"—effectively steal money from prisoners who sell their wares at the Angola Prison Rodeo, without prior notice or a hearing. He alleges that each of the other defendants knew or should have known of this illegal conduct and, through their actions in denying his grievances and preventing a state court hearing, agreed to work together to cover it up.  Because the Prison Officials deprived him of a constitutionally

protected property interest without providing him the procedural protections they knew he was due, the district court was correct to deny qualified immunity.

## STATEMENT OF JURISDICTION

Mr. Savage filed his suit in the district court pursuant to 42 U.S.C. § 1983. The parties agree that the district court had subject matter jurisdiction over Mr. Savage's claim because it raised a federal question, *see* 28 U.S.C. § 1331, and because it raised a civil rights deprivation, *see* 28 U.S.C. § 1343(a)(3). Although this is an interlocutory appeal by the Prison Officials, "[t]he court has appellate jurisdiction to review [the] district court's order denying a motion to dismiss on the basis of qualified immunity[,]" because "'the appeal concerns the purely legal question [of] whether the defendants are entitled to qualified immunity on the facts.'" *Bevill v. Fletcher*, 26 F.4th 270, 274 (5th Cir. 2022) (quoting *Armstrong v. Ashley*, 918 F.3d 419, 422 (5th Cir. 2019).

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

Mr. Savage's complaint adequately alleged that the Prison Officials illegally confiscated his earnings from the Angola Prison Rodeo without prior notice or hearing, and subsequently agreed and acted in concert to deprive Mr. Savage of a meaningful avenue for judicial review of those unlawful practices. Was the district court correct when it concluded that the Prison Officials are not entitled to qualified immunity at the pleading stage?

## STATEMENT OF THE CASE

## I.    FACTUAL BACKGROUND

Gregory Savage, the Plaintiff-Appellee, has been incarcerated at the Louisiana State Penitentiary at Angola since October 1989.  ROA.11, 13.  In 1996, Mr. Savage began selling his hobbycraft, leather belts, at the Angola Prison Rodeo, a prison-sponsored rodeo where inmates are permitted to sell their arts and crafts to attendees.  ROA.13.  At each Rodeo, Mr. Savage earned between $300 and $3,500 for his crafts.  ROA.31.  Over time, those sales allowed Mr. Savage to earn a significant sum of money in his inmate compensation account; he made approximately $80,000 between 1996 and 2019.  ROA.13.  He alleges that "approximately $16,000.00" of that amount "was illegally confiscated" by prison officials "under the guise of taxes and commissions."  ROA.13.  Mr. Savage alleges that his money was taken as part of a "lucrative prison scam" in which "top prison officials" have been able to steal "hundreds of thousands—if not millions—of dollars from volunteer inmate crafters" who participate in the Angola Prison Rodeo.  ROA.10-11.

Mr. Savage first challenged the confiscation of his money by filing a first-step Administrative Remedy Procedure (ARP) grievance on November 1, 2018.  ROA.31.  In that grievance, he specifically alleged that his money had been illegally seized "without a due process hearing," and requested, among other things, a restitution hearing, copies of his "monthly financial statements" so that they could

be made part of the record for administrative review, and that the prison "cease the illegal practice of seizing" funds earned from the Rodeo.  ROA.31-32.

The prison provided a one-paragraph response to the grievance on November 19, 2018, stating that at "[e]very rodeo all offenders that sell hobbycraft have a certain percentage taken out of what they sell" and that "[t]his practice was implemented to pay taxes to both state and parish for hobbycraft sold, fees for using credit card machines to handle transactions and the commission is for the maintenance of the grounds, building and parking areas at the Rodeo grounds." ROA.33.  Notably, in addition to denying Mr. Savage a hearing on the matter, the response did not supply Mr. Savage with copies of his financial statements nor make them part of the administrative record.

Mr. Savage then asked for a second-step review of his grievance.  ROA.13-14.  He noted that the first-step ARP response was either untrue or unauthorized, because "[a]ll expenses associated with the Rodeo are paid from the Rodeo fund" and "[o]ffenders are not obligated to pay any expenses."  ROA.33.  The second-step ARP was also summarily denied because, according to the Prison Officials, "[t]he response provided" was "clear and concise, as well as has addressed your request appropriately."  ROA.34.

Having exhausted administrative remedies, in February 2019, Mr. Savage filed a Petition for Writ of Mandamus in the 19th Judicial District Court requesting

restitution of the confiscated money, or at minimum a restitution hearing.  ROA.14.

Mr. Savage's Petition explained that the confiscation of funds was unauthorized by

law because Louisiana Revised Statute 15:874 sets forth the permissible deductions

from an inmate's compensation account, and taxes or commissions for the Rodeo is

not one of them.  ROA.37.  Mr. Savage also noted that a Louisiana court in a prior

case had found that the earnings from the Angola Prison Rodeo itself more than paid

for the cost of the Rodeo, without requiring any contribution from inmate sales.

ROA.38.  On April 15, 2019, the Commissioner of the 19th Judicial District Court

issued an order denying Mr. Savage a hearing and instead setting a briefing schedule

to rule on the papers.  ROA.14.  Mr. Savage then waited for over nineteen months

before filing his complaint in federal district court, yet "[n]o further action" was

taken in the state court proceeding.  ROA.14.

Mr. Savage alleges that he eventually learned why he was unable to get a

hearing to recover his money—in either the administrative proceedings or in the 19th

Judicial District Court—despite the strong merits of his underlying claim.   In

relevant part, Mr. Savage alleged that various prison officials had agreed to cover up

their wrongdoing both in the ARP and in the state court proceeding.  ROA.11.  Mr.

Savage alleged with specificity how each of the Prison Officials in this case had

contributed to deny him due process to redress the unlawful seizure of his property:

- Defendant Vannoy, the head Warden, ROA.12, received and denied Mr. Savage's first-step grievance despite knowing it was meritorious, ROA.13, and despite admitting to Defendant Hood that he unlawfully confiscated funds, ROA.16. He also agreed with Defendant Hood to resolve the first-step grievance by labeling the confiscation a "practice" and denying Mr. Savage a hearing on that basis. ROA.16. He admitted the illegal scheme to his subordinates Defendants Delaney and Lamartiniere but instructed them to remain silent about it. ROA.19.

- Defendant Hood, an attorney for the Secretary, ROA.12, spoke with Defendant Vannoy to ensure that Mr. Savage did not receive a hearing at the first-step grievance, ROA.16; spoke with Defendant LeBlanc to ensure that Mr. Savage did not receive a hearing at the second-step grievance, ROA.16-17; spoke with Defendant LeBlanc and Commissioner Robinson to ensure that Mr. Savage did not receive a hearing in the 19th Judicial District Court, ROA.15, 17; and coordinated with Defendant Morris to create and file a false affidavit that would be used to deny Mr. Savage relief in the 19th Judicial District Court, ROA.17-18.

- Defendant LeBlanc, the Secretary of the Department of Public Safety and Corrections, ROA.11-12, spoke with Defendant Hood to ensure that Mr. Savage did not receive a hearing at the second-step grievance, ROA.16-17;

and spoke with Defendant Hood to ensure that Mr. Savage did not receive a hearing in the 19th Judicial District Court, ROA.15, 17.

- Defendant Morris, an attorney for the Department of Revenue, ROA.12, coordinated with Defendant Hood to create and file a false affidavit that would be used to deny Mr. Savage (and others) relief in 19th Judicial District Court proceedings, ROA.17-18.

- Defendant Rosso, an inmate banking employee, ROA.12, illegally seized the funds on behalf of the Prison Officials, ROA.31; and prepared the erroneous first-step denial at the direction of Defendant Vannoy and with the approval of Defendants Lamartiniere and Coody, ROA.18-19.  Furthermore, Defendant Rosso knew or should have known that Defendant Vannoy's scheme was illegal, failed to report it, and instead concealed it.  ROA.18-19.

- Defendant Joseph Lamartiniere, the Deputy Warden, ROA.12, knew or should have known that Defendant Vannoy's scheme was illegal, failed to report it, and instead concealed it.  ROA.18-19. He also signed the erroneous first-step grievance denial.  ROA.33.

- Defendant Coody, an assistant Warden, ROA.12, knew or should have known that Defendant Vannoy's scheme was illegal, failed to report it, and instead concealed it.  ROA.18-19.  She also signed the erroneous first-step grievance denial.  ROA.33.

- Finally, Defendant Delaney, a Deputy Warden, ROA.12, knew or should have known that Defendant Vannoy's scheme was illegal, failed to report it, and instead concealed it. ROA.18-19.[1]

According to Mr. Savage, the result of the Prison Officials' coordinated conduct was this: despite having had his money taken without a hearing, he was erroneously denied a remedy at the first and second steps of the ARP; denied an opportunity to develop the record in the ARP; denied a hearing in front of the 19th Judicial District Court Commissioner; and set up for an erroneous denial in the 19th Judicial District Court. In other words, in the two years after Mr. Savage filed his initial grievance, Defendants successfully conspired to prevented Mr. Savage from receiving so much as a hearing to address the deprivation of his property, much less any meaningful review.

## II.    RELEVANT PROCEDURAL HISTORY

On December 1, 2020, Mr. Savage filed a complaint in the United States District Court for the Middle District of Louisiana seeking declaratory, injunctive, and punitive relief under 42 U.S.C. § 1983, alleging violations of the Due Process Clause of the Fourteenth Amendment. ROA.9-27. He attached eight exhibits to his

---

[1] Mr. Savage also alleged that Deputy Warden Stephanie Lamartiniere, ROA.12; 19th Judicial District Court Commissioner Nicole Robinson, ROA.12-13; and Governor John Bel Edwards, ROA.81, were part of this conspiracy. The claims against them have been dismissed on other grounds and are not part of this appeal. ROA.256-57, 290-91, 302-03.

complaint, consisting of his administrative grievances, the prison's responses, the petition for a writ of mandamus that he filed in state court, the state court commissioner's orders denying him a hearing, a copy of the allegedly false affidavit signed by Defendant Morris at the direction of Defendant Hood, and a conduct report related to prior retaliation against him.  ROA.28-39.

The Prison Officials moved to dismiss on the ground that they were entitled to qualified immunity.  ROA.159-70.  Mr. Savage filed an opposition, ROA.187-94, but the Prison Officials did not file a Reply.  The magistrate judge assigned to this case issued a report recommending that the district court grant in part and deny in part the Prison Officials' motion to dismiss.  ROA.271-78.  After summarizing Mr. Savage's detailed allegations and outlining the relevant law governing qualified immunity at the pleading stage, the magistrate concluded that "[t]he plaintiff's allegations, accepted as true, state a claim for conspiracy and violation of his right to procedural due process."  ROA.276.

The magistrate noted that "[d]eprivations may be 'random and unauthorized' or made pursuant to policy," and, citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 435-36 (1982), explained that the "adequate-state-remedies analysis is not applicable" where a deprivation results from state procedure, rather than random action.  ROA.276.  Construing the *pro se* complaint liberally, as the law requires, the magistrate held that Mr. Savage had alleged two adequate and independent

procedural due process violations: (1) that "the defendants deprived him of certain funds as part of a practice and procedure," and (2) that "defendants conspired to deprive him of any hearing." ROA.276. "Accepting the plaintiff's allegations as true," the magistrate concluded that, under the governing legal principles for conspiracy claims, if "defendants collaborated during the administrative remedy process to deprive him of a restitution hearing, and continued to collaborate when he sought review in the state court," that was sufficient to state a claim for conspiracy. ROA.277.

The magistrate acknowledged that, to the extent Mr. Savage "complains about the denial of his grievances" as "standalone claims," there is "no procedural due process right inherent in such a claim." ROA.277-78. The magistrate therefore recommended dismissing any claims "for denial of his grievances," but otherwise allowing the claims to go forward. ROA.278. The magistrate also recommended dismissing a claim against Defendant John Bel Edwards, the state governor, that had been filed in a supplemental complaint. ROA.278.[2]

The Prison Officials filed objections to the magistrate judge's report shortly after it issued. ROA.282-93. They argued (1) that the alleged conduct of each defendant had not been independently evaluated, ROA.286-87; (2) that the

---

[2] Additionally, a separate report had recommended dismissing claims against 19th Judicial District Court Commissioner Nicole Robinson. ROA.260-70.

magistrate had failed to consider the particular conduct of each defendant in the second part of the qualified immunity analysis, ROA.287-88; (3) that the magistrate had maintained a claim to conspiracy although there is no "inherent" due process right in the ARP, ROA.288-89; (4) that the magistrate did not identify a procedural due process violation, ROA.289-92; and (5) that the magistrate had maintained a conspiracy claim without an underlying constitutional violation, ROA.292.

On February 10, 2022, the district court issued an order addressing the Prison Officials' objections and adopting the magistrate judge's recommendations. ROA.300-03. The district court "agree[d] that the Complaint may state a claim for conspiracy *and* a violation of Plaintiff's right to procedural due process." ROA.300-01 (emphasis added). The court overruled the Prison Official's objection that the magistrate had not analyzed each defendant's role, noting that a "clear recitation of the facts" relevant to each defendant was part of the magistrate's report. ROA.301. The district court also overruled the Prison Officials' objection that "because there is no procedural due process right inherent in the ARP process" there could not be a conspiracy claim. ROA.301. It concluded that despite the lack of a constitutional right to any specific administrative grievance process, "[t]he 14th Amendment does require an opportunity . . . for a hearing appropriate to the nature of the case," quoting *Logan*, 455 U.S. at 437, and the allegation of "collaboration by Defendants . . . to deprive [Mr. Savage] of a restitution hearing and a state court review" stated a claim

11

for denial of an appropriate hearing. ROA.301-02. The district court dismissed Mr. Savage's "standalone claim[s]" for "denial of his ARP" "to the extent they exist," but still found that the complaint stated a viable claim for a violation of procedural due process in addition to conspiracy. ROA.301-02.

The Prison Officials timely appealed. ROA.304-07.

## SUMMARY OF ARGUMENT

The district court correctly denied the Prison Officials' motion to dismiss because, accepting his well-pleaded allegations at true, Mr. Savage stated a claim for a violation of procedural due process, stated a claim for conspiracy, and demonstrated that the Prison Officials were not entitled to qualified immunity.

*First*, Mr. Savage adequately alleged that he suffered a constitutional procedural due process violation in connection with the loss of his property. Mr. Savage has a constitutionally protected property interest in the money that he earned from the Angola Prison Rodeo and held in his compensation account. When some of that money was taken by prison officials without either notice or an opportunity to be heard before the deprivation occurred pursuant to an established practice of the prison, that deprived Mr. Savage of procedural due process prospectively. Then, when state remedies proved inadequate to redress the deprivation, that deprived Mr. Savage of procedural due process retrospectively.

*Second*, Mr. Savage stated a claim for conspiracy to deprive him of procedural due process because he alleged that the Prison Officials acted in concert to prevent meaningful review both in the administrative and state court proceedings.

*Third*, the Prison Officials are not entitled to qualified immunity because it was clearly established Mr. Savage was entitled to due process before he could be deprived of his constitutional property interest in his earnings from the Rodeo.

## STANDARD OF REVIEW

To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "These standards are the same when a motion to dismiss is based on qualified immunity." *Dyer v. Houston*, 964 F.3d 374, 379 (5th Cir. 2020). On appeal, the Court "reviews de novo the district court's denial of a motion to dismiss on qualified immunity grounds or for failing to state a claim, accepting all well-pleaded facts as true and viewing them in the light most favorable to the plaintiff." *Bevill v. Fletcher*, 26 F.4th 270, 274 (5th Cir. 2022).

Where, as here, the plaintiff was not represented by counsel in the district court, his complaint "must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted). For the same reason, the Court must consider "all of his complaint, including the

attachments" when assessing the well-pleaded factual allegations. *Clark v. Huntleigh Corp.*, 119 F. App'x 666, 667 (5th Cir. 2005). "The plausibility standard is not akin to a 'probability requirement[.]" *Iqbal*, 556 U.S. at 678 (citation omitted). Instead, it simply requires the plaintiff to "plead facts that allow the court to draw the reasonable inference that the defendant is liable for the harm alleged." *Bevill*, 26 F. 4th at 274.

## ARGUMENT

## I.   MR. SAVAGE SUFFICIENTLY ALLEGED A CONSTITUTIONAL VIOLATION OF HIS RIGHT TO PROCEDURAL DUE PROCESS

The district court was correct to hold that Mr. Savage's Complaint stated a claim against the Prison Officials for violating his right to procedural due process in two respects: first, when they confiscated his money pursuant to a practice and procedure and without notice and an opportunity to be heard; and second, when they deprived him of meaningful post-deprivation review of that practice and procedure.

Where, as here, the underlying constitutional claim is a procedural due process violation under § 1983, "'a plaintiff must first identify a protected life, liberty or property interest and then prove that governmental action resulted in a deprivation of that interest.'" *Morris v. Livingston*, 739 F.3d 740, 749-50 (5th Cir. 2014) (quoting *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010)). Although a deprivation of property itself does not violate federal constitutional rights, "'what is unconstitutional is the deprivation of such an interest *without due process of law*.'"

*Id*. at 750 (quoting *Zinermon v. Burch*, 494 U.S. 113, 125 (1990)) (emphasis in original).

### A. Mr. Savage Identified a Clearly Established Property Interest in the Money He Earns From His Hobbycraft Sales

The Fourteenth Amendment's prohibition on deprivations of "property" without due process, U.S. Const. amend. XIV, naturally extends to the money a person earns, saves, and deposits into her accounts. *See Stotter v. Univ. of Tex. at San Antonio*, 508 F.3d 812, 822 (5th Cir. 2007) ("Property interests protected by the procedural due process clause include, at the very least, ownership of real estate, chattels, and money.") (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 571-72 (1972)). "Since '[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution,' the 'federal courts must take cognizance of the valid constitutional claims of prison inmates.'" *Morris*, 739 F.3d at 746 (quoting *Turner v. Safley*, 482 U.S. 78, 84 (1987)). It follows, then, that prisoners enjoy a protected property interest in money earned in prison and held in their compensation accounts, exactly as any other person enjoys a protected property interest in her savings. Indeed, this Court has held so explicitly, *see, e.g.*, *Rosin v. Thaler*, 417 F. App'x 432, 434 (5th Cir. 2011) (per curiam) ("A prisoner has a protected property interest in the funds in his prison account."), as have other Circuits. *See, e.g., Vance v. Barrett*, 345 F.3d 1083, 1088-89 & n.6 (9th Cir. 2003) (concluding with "little trouble" inmate funds were a "constitutionally protected property interest");

*Reynolds v. Wagner*, 128 F.3d 166, 179 (3rd Cir. 1997) ("Inmates have a property interest in funds held in prison accounts."); *Mahers v. Halford*, 76 F.3d 951, 954 (8th Cir. 1996) ("[I]nmates have a property interest in money received from outside sources."); *Campbell v. Miller*, 787 F.2d 217, 222 (7th Cir. 1986) ("It is beyond dispute that [plaintiff] has a property interest in the funds on deposit in his prison account.").

The pleaded facts plainly implicate a protected property interest. Mr. Savage alleges that he has sold handmade leather belts as a volunteer at the Angola Prison Rodeo since 1996. ROA.13. He alleges that between 1996 and 2019, he earned about $80,000, which was deposited into his compensation account at the prison, ROA.13, and that the Prison Officials "illegally seized approximately 20%" of his earnings, or approximately $16,000, ROA.32, by deducting the money from Mr. Savage's compensation account, ROA.37.

Despite decades of case law holding that inmates have a constitutionally protected property interest in the funds in their prison accounts, the Prison Officials object that the district court "did not explain how Savage's hobbycraft proceeds were protected by the Fourteenth Amendment." Opening Brief at 22. They frame the question as whether a property interest exists in "withheld funds" used "to pay sales taxes, commissions, and credit card fees." Opening Brief at 2. But that framing puts the cart before the horse. The question whether the Prison Officials had the right to

16

withhold or withdraw some portion of the funds in Mr. Savage's account is the threshold question in determining *whether* Mr. Savage was unlawfully deprived of his property. Mr. Savage has a property interest in *all* of the income he alleges he earned from his hobbycraft. *See Rosin*, 417 F. App'x at 434.[3] Of course, there may be circumstances in which prison officials can legally withhold some money for specified purposes, but at this stage, to hold that the money the Prison Officials took from Mr. Savage is outside the ambit of the Fourteenth Amendment because they were legally entitled to take it would be to prejudge disputes of fact in the Prison Officials' favor. At the pleading stage, the court is required to do the opposite.

### B.     The Complaint Adequately Pleads that Governmental Action Resulted in a Deprivation of Mr. Savage's Property Interest

Mr. Savage's Complaint adequately identified "governmental action result[ing] in a deprivation of" his property interest in two respects. *Morris*, 739 F.3d at 749-50 (citation omitted). First, the Prison Officials confiscated Mr. Savage's money without providing him advanced notice or an opportunity to be heard, as due process requires; and second, the state did not provide constitutionally

---

[3] Notably, in a case involving profits at the Angola Prison Rodeo, the Louisiana Court of Appeals explained that "[t]he profits from each concession booth" at the Rodeo "belong to the organization [of inmates or prison employees] sponsoring the concession." *Fulford v. Green*, 474 So. 2d 972, 974 (La. Ct. App. 1985). Consequently, not only do inmates have a general property interest in their money, but Louisiana case law highlights the specific property interest that inmates have in money they earn at the Rodeo.

adequate post-deprivation due process to allow Mr. Savage to seek redress for his injuries.

### 1.     The Prison Officials confiscated Mr. Savage's money without advanced notice or an opportunity to be heard.

The Prison Officials violated Mr. Savage's right to procedural due process because they took approximately twenty percent of his earnings without notice or an opportunity to be heard in advance pursuant to an established state procedure.  In assessing procedural due process violations, the Supreme Court has distinguished between a loss of property "as a result of a random and unauthorized act," and a loss of property pursuant to "some established state procedure." *Logan*, 455 U.S. at 435-36 (citation omitted).  The former does not violate procedural due process so long as adequate post-deprivation remedies are available.  *See Marshall v. Norwood*, 741 F.2d 761, 764 (5th Cir. 1984) (explaining the *Parratt/Hudson* doctrine).[4]  In the latter case, however, even "a post-deprivation hearing . . . would be constitutionally inadequate," because it is "the 'established state procedure' that destroys [the property interest] without according . . . proper procedural safeguards." *Logan*, 455 U.S. at 436.  Given his protected property interest, the Fourteenth Amendment

---

[4] *Parratt v. Taylor*, 451 U.S. 527 (1981) (overruled on other grounds), "held that the individual misconduct of a state prison official did not violate a prisoner's constitutional right as state remedies were available which met due process requirements." *Marshall*, 741 F.2d at 763. *Hudson v. Palmer*, 468 U.S. 517 (1984), "extends the rule of *Parratt* to intentional deprivations of property." *Marshall*, 741 F.2d at 764.

required an opportunity to be heard "appropriate to the nature of the case." *Id.* at 437 (citation omitted).  Mr. Savage, however, was not provided any such opportunity before the Prison Officials took his money.

Mr. Savage alleges that the deprivation of property in this case was not random or aberrational, but rather occurred pursuant to a well-established practice and procedure of the prison.  Indeed, the Prison Officials themselves conceded as much in their one-paragraph response to Mr. Savage's ARP grievance, which stated that "[t]his ***practice*** [of withholding income from inmates] was implemented to pay taxes to both state and parish for hobbycraft sold, fees for using credit card machines to handle transactions and the commission is for the maintenance of the grounds, building and parking areas at the Rodeo grounds."  ROA.33; *see also* ROA.13.

Because a government deprivation of property "must, at a minimum, be preceded by notice and an opportunity for the individual to be heard," *Morris*, 739 F.3d at 750, the complete lack of any procedural safeguards before the deprivation constitutes a procedural due process violation.  The Prison Officials have no relevant case law to support their position.  Although Courts have found, under other circumstances, that prison officials may lawfully deduct funds from prison accounts, those deprivations comported with due process because they were authorized by statute or regulation, which supplied the advance notice sufficient to satisfy procedural due process.  *Morris*, for example, dealt with a prison's deduction of a

19

health care services fee charged against any incarcerated person who received medical treatment.  739 F.3d at 742.  The Court held that "the notice provided was constitutionally adequate," explaining that the fee was both authorized by statute and posted for inmates to see in advance.  *Id*. at 750-51.  Here, by contrast, the Prison Officials provided no notice of their practice at all, and did not even reveal it until Mr. Savage challenged the unexplained deductions from his account.

Moreover, because the fee at issue in *Morris* was authorized by a statute specifically addressing prison accounts, the legislative process itself provided the notice that due process requires.  *See County Line Joint Venture v. Grand Prairie*, 839 F.2d 1142, 1144 (5th Cir. 1988) ("When the legislature passes a law which affects a general class of persons, those persons have all received procedural due process—the legislative process." (citation omitted)).  In this case, however, the Prison Officials were not withholding funds from inmates pursuant to any statute or regulation—if some law or regulation authorizes the Prison Officials' conduct, neither their brief nor the record identifies it.  *Cf. Anderson v. Louisiana Dep't of Public Safety & Corrections*, 242 So. 3d 614, 618 (La. Ct. App. 2018) ("[W]e note at no point . . . has DPSC set forth any statute, rule, promulgated policy, or regulation authorizing its practice of withholding these amounts, particularly commissions, from an inmate's sale receipts.").

Notably, Mr. Savage does not argue that the prison may *never* deduct money from his account without a formal hearing, simply because he has a property interest in those monies.   To the contrary, he acknowledges that there are situations— typically set forth in statutes or regulations—in which the prison is authorized to deduct funds from his accounts.  *See* ROA.37-38 (discussing La. R.S. 15:874, which allows withdrawals from a compensation account to satisfy medical co-payments, court fees, and restitution obligations).  But this is not one of them.  Mr. Savage received neither notice nor an opportunity to be heard before his income was withheld pursuant to the prison's established procedure.  Mr. Savage therefore suffered a constitutional injury.

### 2.    The state post-deprivation remedies available to Mr. Savage do not supply constitutionally adequate due process.

Mr. Savage also states a claim for a violation of procedural due process because the Prison Officials denied Mr. Savage any meaningful post-deprivation review of their withholding practices, both during the administrative remedy process and when Mr. Savage sought relief in state court.   Under the *Parratt/Hudson* doctrine, where a state prison official intentionally deprives an incarcerated person of his property, the Fourteenth Amendment is violated if the prisoner can show that there is no adequate state remedy.  *See Marshall*, 741 F.2d at 764.  Mr. Savage has met that burden here because, he alleges, while they may have gone through the

motions of administrative and state court review, the actions of the Prison Officials deprived him of any meaningful process or adequate remedy.

The ARP was constitutionally inadequate because the Prison Officials' actions made the remedy meaningless. *Cf. Dillon v. Rogers*, 596 F.3d 260, 268 (5th Cir. 2010) (remanding to develop record on whether "incorrect statements by officials [made] remedies unavailable"). Even before Mr. Savage filed his ARP grievance, the Louisiana First Circuit Court of Appeals ruled on almost identical facts that a plaintiff stated a claim for violation of substantial rights when the prison "merely outlined its practice of withholding" rodeo funds with "no explanation of its authority for this practice." *See Anderson*, 242 So. 3d at 618 (decided February 7, 2018). Yet eight months after *Anderson*, when Mr. Savage filed his grievance, the prison provided Mr. Savage the exact same inadequate response, word for word, that the Louisiana Court of Appeal had rejected. *Compare* ROA.33 (explanation of Mr. Savage's ARP denial) *with Anderson*, 242 So. 3d at 615 (quoting the same language). There is also no indication the prison ever provided Mr. Savage with receipts or tax returns for the alleged taxes and commissions, nor even the monthly financial statements Mr. Savage requested to make a record for appeal, ROA.32.[5]

---

[5] Notably, judicial review of a denied ARP grievance "shall be confined to the record" and "the issues presented in the . . . administrative remedy request," La. R.S. 15:1177(A)(3), (5), such that the Commission relies on the record from the ARP, and may or may not allow Mr. Savage to supplement that record.

Mr. Savage alleges that this happened because, instead of actually reviewing the grievance on the merits, the Prison Officials had pre-decided and agreed to deny the grievance regardless of the law or facts. ROA.16-17. Nothing about that process is constitutionally adequate, because it is no process at all.

Unfortunately, the next stage—the state court proceeding—also proved constitutionally inadequate because the Prison Officials continued to conspire to deprive Mr. Savage of any real review. Mr. Savage filed for a writ of mandamus in February 2019. ROA.35-41. In April 2019, Mr. Savage learned that he would have no hearing on the matter. ROA.42-44. Then, in September 2019—by which time there had been no action in the matter—Mr. Savage alleges he learned that he had received no hearing *because* the Prison Officials conspired to deprive him of one, ROA.17 (alleging Defendant Hood coordinated with Defendant LeBlanc to instruct the 19th Judicial District Court to decide Mr. Savage's matter without a hearing). Mr. Savage still did not file the present § 1983 suit until December 2020—over two years after filing his first ARP grievance, and over a year after filing in state court. ROA.13-14, 27. In that time "[n]o further action ha[d] been taken" toward resolution of Mr. Savage's property claim, ROA.14. Mr. Savage alleges that this failure to act was a result of the Prison Officials continuing to conspire to deprive Mr. Savage of process, not just by ensuring Mr. Savage would not have a hearing (let alone a timely one), ROA.17, but by creating and submitting a "false, misleading and inaccurate"

23

affidavit that would be used to deny him state-court relief.  ROA.18.  Accepting Mr. Savage's allegations as true, the intentional actions to deprive him of due process—both in the ARP process and in state court—render the post-deprivation procedures inadequate.

Because Mr. Savage alleges the Prison Officials made his process inadequate and meaningless, the Prison Officials' reliance of *Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005), is misplaced.  Setting aside the fact *Geiger* contained little discussion of protected property interests or the process due, *Geiger* held only that a failure to properly investigate a grievance was not itself a violation because there is no "federally protected liberty interest in having these grievances resolved to his satisfaction." 404 F.3d at 374.  But Mr. Savage does not assert a due process interest in the *outcome* of his grievance; his complaint is that the Prison Officials actively prevented review of his grievance at all.  *See Wilkerson v. Goodwin*, 774 F.3d 845, 848-49 (5th Cir. 2014) (denying summary judgment on a procedural due process claim, even though the plaintiff regularly received review through state administrative proceedings, on allegation that plaintiff "receive[d] inadequate 'sham' reviews before the board").  The same problem exists for the state court proceeding that supposedly will provide judicial review of the administrative process.  Because the state court proceeding is being obstructed by the conspiracy, waiting (even longer) for the proceeding to end is no remedy at all.

At this stage, Mr. Savage has adequately alleged that there was a lack of procedural protection both before and after the deprivation of property. He thus properly establishes a claim for a procedural due process violation.

## II. MR. SAVAGE STATED A CLAIM FOR CONSPIRACY TO VIOLATE A CONSTITUIONAL RIGHT

Mr. Savage plausibly alleges a claim for conspiracy to violate his constitutional rights. "To state a claim for conspiracy under § 1983, a plaintiff must allege the existence of (1) an agreement to do an illegal act and (2) an actual constitutional deprivation." *Bevill v. Fletcher*, 26 F.4th 270, 274-75 (5th Cir. 2022) (citation omitted). "[A] plaintiff's § 1983 conspiracy claim need not satisfy a probability requirement at the pleading stage[;] plausibility simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal agreement." *Id.* at 284 (alterations accepted, internal quotation marks and citation omitted). While the Court must assess the actions of each defendant, "regardless of whether or not [defendant's] actions alone actually caused a constitutional violation, liability can still be imposed on [defendant's] alleged membership in a conspiracy." *Id.* at 283 (alterations accepted, internal quotation marks and citation omitted).

Here, the district court correctly found that Mr. Savage had pleaded an agreement to do an illegal act. As the district court acknowledged, Mr. Savage "assert[ed] that Defendants collaborated during the administrative remedy process to deprive him of a restitution hearing and when he sought review in state court."

ROA.301.  Indeed, Mr. Savage's complaint was painstakingly clear that he alleged unlawful agreements involving the Prison Officials to deprive him of due process. *See, e.g.*, ROA.20-25 (alleging unlawful agreements between various Prison Officials at different stages in the proceedings); ROA.13-14 (asking for declaratory judgments that detail the mutual agreements between Prison Officials to deny various aspects of due process).

Moreover, the district court correctly found an underlying violation of a constitutional right—the right to procedural due process articulated above.  The Prison Officials' argument about a supposed "freestanding conspiracy claim," Opening Brief at 34, misunderstands the law and the district court's order.  Both the district court and the magistrate acknowledged that no standalone constitutional right to the administrative remedy process exists.  *See* ROA.277-78, 301.  Given that consensus, a right to the grievance process was not the source of the underlying due process violation the magistrate and district court identified.

The only fair interpretation of the district court's ruling is that in an apparent abundance of caution, both the district court and the magistrate judge dismissed any standalone claims for denial of the administrative remedy process "to the extent they exist."  ROA.301; *see also* ROA.277 ("To the extent the plaintiff complains about the denial of his grievances . . . .").  The district court did *not* order that claims 1, 2, and 8 were dismissed, as the Prison Officials contend.  Opening Brief at 13.  It simply

clarified that the claim for denial of procedural due process and conspiracy had to rest on allegations beyond the denial of the grievance itself.  Indeed, if the district court intended to dismiss those three claims, it could have said so explicitly.  Instead, the district court held that Mr. Savage had sufficiently alleged a deprivation of property without due process (even though not tied explicitly to the administrative remedy process) *and* had alleged sufficient facts to show agreement to cause that deprivation.  These allegations satisfy the elements of a conspiracy claim.

## III.  THE DISTRICT COURT CORRECTLY DENIED THE PRISON OFFICIALS QUALIFIED IMMUNITY

The district court correctly held that the Prison Officials are not entitled to qualified immunity.  "Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." *Taylor v. Riojas*, 141 S. Ct. 52, 53 (2020) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)).  "The qualified immunity defense has two prongs: whether an official's conduct violated a statutory or constitutional right of the plaintiff; and whether the right was clearly established at the time of the violation." *Dyer v. Houston*, 964 F.3d 374, 380 (5th Cir. 2020) (internal quotation marks and citation omitted).  "While [a plaintiff] need not identify a case 'directly on point,' 'existing precedent' must 'place the statutory or constitutional question beyond debate.'" *Id*. at 383 (alteration accepted and citation omitted).  At bottom, the question "is whether the state of the law at the time

27

of the incident 'gave the Officers fair warning that their alleged treatment of [the plaintiff] was unconstitutional.'" *Id.* (alteration accepted and citation omitted).

The discussion in Section I establishes that the Prison Officials fail on the first prong of qualified immunity in this case: the conduct Mr. Savage alleges violated his constitutional right to procedural due process. The qualified immunity defense also fails on the second prong because that procedural due process right was clearly established in the Fifth Circuit (and beyond). When the Prison Officials took money from Mr. Savage's earnings without lawful authorization to do so, and later actively obstructed his attempts to seek review, they had "fair warning" that their actions violated Mr. Savage's constitutional rights.

While the Prison Officials ask this Court to assess *only* post-deprivation due process, *see, e.g.*, Opening Brief at 22, they should be denied qualified immunity for their violation of pre-deprivation due process. Specifically, clearly established law put the Prison Officials on notice that they could not institute a practice of taking money from inmates without authorization in the law and without a due process hearing. For example, in *Smith v. Epps*, 326 F. App'x 764, 764-65 (5th Cir. 2009), this Court reversed a district court's dismissal of "a claim to recover funds allegedly taken from [plaintiff's] prison account without authorization." The Court held that where "prison officials" allegedly "engaged in a 'pattern' of taking money from inmates' accounts," and where that money was "taken pursuant to the policy,

practices, and customs" of the Department of Corrections, "the 'random and unauthorized' element required for the application of the *Parratt/Hudson* doctrine is simply not met." *Id*. at 765 (internal quotation marks and citation omitted). In other words, the plaintiff did not have to demonstrate inadequate post-deprivation remedies to establish a violation of his procedural due process right; he stated a procedural due process claim because the deprivation occurred through a prison practice. *Id*. This Court decided that case over a decade ago, and other Courts of Appeals have reached similar conclusions on similar facts. *See, e.g., Vance*, 345 F.3d at 1090 ("Without underlying authority and competent procedural protections, [prison officials] could not have constitutionally confiscated the net accrued interest [from an inmate's account]."); *Quick v. Jones*, 754 F.2d 1521, 1523 (9th Cir. 1985) (taking money from inmates "in the guise of" a prison policy, without a prior hearing, "alleged a meritorious claim of deprivation of property without due process of law").

Alternatively, even if the Court applies the *Parratt/Hudson* doctrine to Mr. Savage's claim, clearly established law put the Prison Officials on notice that Mr. Savage had a post-deprivation right to due process as well. *See, e.g.*, *Rosin*, 417 F. App'x at 434 ("Where prisoners are permitted to possess property, they have a protected interest in their property and § 1983 provides a remedy if prison officials deprive prisoners of this interest absent due process."); *Reynolds* , 128 F.3d at 179

("[I]nmates are entitled to due process with respect to any deprivation of [money in their accounts].")); *Mahers*, 76 F.3d at 954 ("[I]nmates are entitled to due process before they can be deprived of [money in their accounts]").  Consequently, it was clear at the time the Prison Officials acted that conspiring to make the ARP and state court review effectively sham proceedings rendered the state court post-deprivation remedies inadequate.

This Court's decision in *Wilkerson* illustrates the point.  There, the Court accepted the plaintiffs' allegation that "he receive[d] inadequate 'sham' reviews before the board," 774 F.3d at 849, and even at the summary judgment stage denied qualified immunity because there were issues of material fact on "whether the procedures for review . . . were constitutionally adequate."  774 F.3d at 859.  The fact that the plaintiff regularly received administrate reviews was not a barrier at the pleading stage, because the plaintiff alleged not just that he was denied relief, but that the prison officials were not actually reviewing his claims at all. *See id*.  Just as the defendants in *Wilkerson* had "fair warning" that the sham process they were affording was constitutionally inadequate, the Prison Officials here have fair warning that confiscating Mr. Savage's money and conspiring to prevent him from having meaningful review is a deprivation of due process.  Indeed, the cases where courts do find adequate state court remedies do not just assume that process is sufficient, they note the aspects that provide the adequate process.  *See, e.g.*,

*Campbell*, 787 F.2d at 223 (holding that due process was constitutionally adequate where inmate had "precise notice," "was given a hearing," and "had a reasonable opportunity to defend himself"). Here, in contrast to providing legitimate review of his claim, the Prison Officials impeded the process at each stage.

Finally, the Prison Officials' assertion that the district court did not make a "defendant-by-defendant analysis" of the qualified immunity claims, Opening Brief at 38-39, fails as well. The magistrate's report recited in detail each of the allegations that Mr. Savage made against each of the Prison Officials. ROA.273-75. The report also dismissed Mr. Savage's Complaint as to one of the defendants, ROA.302, and in a separate order dismissed claims against another defendants, ROA.298-99. Mr. Savage's Complaint, in turn, was exceedingly clear, *see supra* 6-8; indeed, in their motion to dismiss before the magistrate, the Prison Officials acknowledged that Mr. Savage had "thoroughly detailed his claims against each defendant." ROA.164. They simply opined that those detailed allegations "[did] not amount to constitutional violations." *Id*.

The Prison Officials' arguments fail because the district court and magistrate did consider defendants individually. In addition, the Prison Officials' arguments fail because in making their individual-analysis argument, the Prison Officials point to *Meadours v. Ermel*, 483 F.3d 417, 421-22 (5th Cir. 2007), a factually distinct case that did not involve conspiracy claims. *See* Opening Brief at 38-39. In *Meadours,*

the Court held that in assessing Fourth Amendment excessive force violations, the district court must "consider the officers['] actions separately on remand." 483 F.3d at 422.    Unlike the plaintiffs in *Meadours*, who alleged that each officer independently used excessive force, Mr. Savage does not allege that each defendant individually and independently violated his constitutional rights—he alleges that they did so as part of a conspiracy.  Consequently, even where an individual officer has not independently violated Mr. Savage's rights, because Mr. Savage alleged sufficient facts for a conspiracy, qualified immunity does not apply.  Moreover, the plaintiff in *Meadours* had already survived a motion to dismiss; the Court was assessing the qualified immunity question at summary judgment, and still ruled that factual issues precluded judgment for the defendants.  *Id*.  *See also Dyer*, 964 F.3d at 381-83 (assessing defendants' individual conduct, but ultimately finding that most defendants' qualified immunity claims failed even at the summary judgment stage because of factual questions about what each defendant did).  Here, Mr. Savage has alleged how *each* Prison Official acted to deprive him of due process, and any factual disputes about those actions do not establish qualified immunity at this stage.  In sum, the Prison Officials' complaint is not that the district court failed to assess each defendant, but that the district court correctly accepted Mr. Savage's allegations about each defendant as true.  Their argument that the district court erred therefore lacks any merit.

## CONCLUSION

This Court should affirm the judgment of the district court and remand for further proceedings.

Date: July 5, 2022

Respectfully submitted,

*/s/ Stephany Reaves*
Stephany Reaves
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Ave., NW
Suite 500E
Washington, DC 20001
(202) 220-1100
(202) 220-2300
Stephany.Reaves@mto.com

Oren Nimni
Samuel Weiss
RIGHTS BEHIND BARS
416 Florida Avenue NW, #26152
Washington, DC 20001
(202) 540-0029
oren@rightsbehindbars.org

Jordan Segall
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue
50th Floor
Los Angeles, CA 90071
(213) 683-9100
Jordan.Segall@mto.com

## CERTIFICATE OF SERVICE

I certify that on July 5, 2022, the foregoing document was served on all parties or their counsel of record through the CM/ECF system.

Dated:  July 5, 2022

/s/ Stephany Reaves
Stephany Reaves

## CERTIFICATE OF COMPLIANCE

1.      This document complies with the word limit of Fed. R. App. P. 32(a)(7)(B), because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 7674 words.

2.      This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14 point, Times New Roman.

DATED:  July 5, 2022

*/s/ Stephany Reaves*
Stephany Reaves